Mr. Guinan, are you with us? I am. Good morning. Good morning. And Mr. Adelman, are you still with us? I am. Great. Case number 20-2046 from the District of Nebraska, Robert Sommerfeld et al. v. Adesta. Good morning, your honors. May it please the court. Good morning, your honors. My name is Pat Guinan. May it please the court. I represent the appellants Robert Sommerfeld, James Kawamoto, and Greg Benak. This is an appeal from the district court's order that one compelled appellants to arbitrate the scope of a settlement agreement where no express agreement to arbitrate exists in that settlement agreement, judge the merits of their declaratory judgment complaint and the settlement agreement's scope on a motion to compel arbitration, and dismiss their declaratory judgment complaint based on their determination and erroneous conclusion that the settlement agreement did not release all claims against the appellants. The appellants' deck action was filed after the defendant, New Adesta, filed an arbitration demand against them seeking damages for work that was done for the New York State Thruway Authority. These are called the NISTA obligations, and the NISTA obligations are set out in a purchase agreement that was executed in 2009. The purchase agreement has an arbitration clause, but subsequent to that purchase agreement, Sommerfeld, Kawamoto, Benak, and New Adesta entered into a settlement agreement releasing all claims arising out of or related to any written contract with the appellants. The settlement agreement does not have an arbitration clause, and in their deck action, the appellants asked for a declaration that the settlement agreement's scope included the NISTA obligations. This appeal is resolved by answering two questions. One, can the district court compel arbitration of a dispute over the party settlement agreement absent an express agreement in the settlement agreement to arbitrate? And two, can the district court judge the merits of the deck action and interpret the settlement agreement's scope when deciding a motion to compel arbitration? And the answer to both questions is no, but that is what the court did anyways. It dismissed the settlement agreement's scope did not include the NISTA obligations and ordered the parties to arbitration under the purchase agreement's arbitration clause. This was clear error. Remember, the settlement agreement was executed after litigation in the Nebraska and Illinois cases was resolved. That litigation involved these documents called proprietary matter agreements or PMAs, but the settlement agreement settled much more than just the PMA claims raised in that settlement agreement says, or contains two releases. The first release was for the lawsuit claims, and these lawsuit plans are specifically defined by the settlement agreement as including those claims raised in the Nebraska and Illinois litigation. But then there's a second release in this case right below that, and this release releases any other claims arising out of or relating to an express or implied contract. This second release can and should be read as broad as at this stage of the litigation, which is on a motion to compel arbitration and a motion to dismiss. At this stage of the litigation, the settlement agreement is read in the light most favorable to appellants, and we have presented several reasons why the second release, when read in a favorable light to appellants, is a standalone release and can and should be interpreted much broader than the narrower lawsuit claims release above it. For example, the second release says this mutual release includes covers and discharge to the foregoing general terms, any claims arising out of or related to an express or implied contract. So looking at that language in a light favorable to the appellants. Just a quick question for you. I mean, isn't this a merits issue? I mean, you criticize the district court for addressing the merits, but isn't the argument you're making to us now essentially the same thing? You just want us to come out or you wanted the district court to come out the other way, or does it really hinge on the fact that it was too early on a motion to dismiss that the district court did this? Because it seems to me the court has to, quote unquote, get to the merits in order to decide whether or not to dismiss the action and compel arbitration, or am I misunderstanding it? I think you're misunderstanding in this respect, your honor. The settlement agreement itself is a standalone agreement. So the question is, does it have an arbitration clause? And it doesn't. The court can't get to the merits of the settlement agreement itself, especially when we have pointed out the fact that there are at least two interpretations, if not an ambiguity in the contract, that would preclude making findings of fact or judging the merits of the claim. Remember, doesn't the release release claims and not abrogate contracts, and doesn't that matter? It does abrogate. That's the point. I was going to get to the case law. It says there's nothing irrevocable about an agreement to arbitrate. Well, I didn't say irrevocable, but I'm saying that that the second release language that you refer to talks about claims. It doesn't talk about the abrogation of all prior contracts, does it? It certainly does. There's language in there. It says it releases all, and I'll go back to that language. Well, let's hear the language, because maybe I misread it. The second release releases all claims arising out of or related to any written contract. Okay, the purchase agreement was a written contract. But it releases the claims arising out of the contract. It doesn't say the contract has ceased to exist. And so isn't this really a merits defense that actually the arbiter will actually decide? At this point in time, your honor, a release can invalidate that arbitration agreement in the purchase agreement. If this release is interpreted in a favorable light to appellants, which it must, then the question becomes the validity of that arbitration agreement in the purchase agreement. At this point in time, we've raised sufficient factual disputes that the scope of the settlement agreement would include the NISTA obligations. This settlement agreement is a standalone release. They could have negotiated an arbitration clause in the settlement agreement. They didn't. So the question is, does this settlement agreement have an agreement to arbitrate? It does not. You can't judge the validity of the settlement agreement claim and then say, well, we're going to arbitrate that under the purchase agreement. The question is, does this settlement agreement have an arbitration claim? It does not. It does not have an arbitration clause. And a settlement agreement can abrogate a prior agreement to arbitrate. If the NISTA claims are part of the scope of the settlement agreement, then the validity of that arbitration clause in the purchase agreement is invalidated. So the question of arbitrability remains with the district court. We've raised sufficient disputes and factual determinations that can and should be decided by the district court because of the fact that there's two settlement agreements. So the point is, they could have created an arbitration clause for the settlement agreement, and when the settlement agreement scope was in dispute, we'd be arbitrating that. But they didn't. What the judge did is he went through the settlement agreement and said, it doesn't apply to the purchase agreement. That is where the error was. The judge cannot make that determination that the settlement agreement has no merits to our claim and then send it to arbitration under a wholly separate agreement, under the purchase agreement. The arbitrability question remains with the district court because we've called into question the validity of that arbitration agreement. And I see that my time is almost up. I'd like to reserve two minutes for rebuttal. Thank you. All right. Thank you very much. Mr. Andelman. Thank you, your honors, and may it please the court. My name is Robert Andelman. I represent the appellee at ADESTA LLC. The appellant in this case is, says that they're not calling into question the validity of the arbitration agreement. Their complaint in this case, the deck action, doesn't seek a declaration that the arbitration agreement is void or that the purchase agreement was altered. Their prayer for relief in their complaint seeks a declaration that they should prevail on the merits on an affirmative defense in the arbitration. In other words, they're asking the court to parse out an affirmative defense and have that ruled. Affirmative defense goes to the merits of the arbitration, have that ruled on in court. It is, as Judge Koba said, something that the arbitrator is going to decide. In fact, she has said she will take it up. And Judge Battalion in his decision said it was for the arbitrator to decide. He wasn't deciding the merits of that defense. Ultimately, this appeal comes down to the answer to the same two questions the parties put before the district court. Was there an express agreement to arbitrate? There's no dispute here that there was. In their complaint in paragraph 6 below, they specifically allege they agreed to the 2009 purchase agreement. The record contains an authentication of that agreement by one of the defendants himself. The purchase agreement includes actually two arbitration clauses, a general one, 17.2, and a specific clause, 15.3, which is at JA 248, that says specifically with regard to the guarantee obligations that these plaintiffs had under the purchase agreement, if they failed to pay, then the destitute was free to initiate an arbitration. There's also no dispute with regard to the second question, which is whether the arbitrated dispute falls within those arbitration clauses. The broad arbitration clause here says any dispute, controversy, or claim arising out of or relating to any purchase document to include the purchase agreement, which is at JA 265. The specific clause, 15.3, says, I'm sorry, Your Honor. The specific clause says that if there's a dispute over the guarantee obligations, it should be arbitrated. And their own complaint admits that the underlying arbitration here, the arbitrated dispute, involves failure to perform certain indemnification and guarantee obligations under the purchase agreement. That's paragraph 17 of their complaint. So there can't be any other way to read that, this case, than that the parties had an arbitration agreement. As Judge Erickson pointed out, it wasn't abrogated or voided by this later dispute involving completely different parties or almost completely different parties, 16 different folks who weren't involved in the purchase agreement to resolve the employment dispute. And so you have to answer those first two questions, yes, particularly given that the standard here under the Supreme Court and Eighth Circuit law is that arbitration is to be compelled unless it can be said with positive assurance that there is no interpretation of the arbitration clause that would encompass the dispute. This isn't a typical motion to dismiss where you have to draw all inferences in favor of the complaint, as they continue to say. In the express scripts decision, the court actually specifically said, when you're dealing with a motion to compel arbitration, that's not the standard. The standard is what the Supreme Court has said under the Federal Arbitration Act, which is, can it be said with positive assurance that there's no interpretation that would suggest this comes under the purchase agreement arbitration clause? And the Supreme Court went even further in 2019 in Schein, saying even if the court believed that the arbitrability issue, the argument for arbitrability was wholly groundless, that the court still would have to leave that to the arbitrator to decide. And that is particularly true in a case like this, where the parties agreed in the purchase agreement that arbitrability itself was to be decided by the arbitrator. And the parties did that by incorporating the AAA commercial rules, Rule 7 of which specifically places with the arbitrator decisions with regard to arbitrability. And this court in the fallow decision in 2009, so it's been established law now for 12 years, weighed in on that point, joined the majority of the sister circuits and held that inclusion of that AAA rule is clear and unmistakable evidence of the party's intent that arbitrability should be decided by the arbitrator. The district court's decision in this case is a narrow one. It was humble. It said there was an arbitration agreement. The underlying dispute in the arbitration clearly involves the subject matter of that clause. And moreover, the parties agreed to submit arbitrability to the arbitrator. And therefore, it is for the arbitrator to make the decision with regard to this release defense. And it's interesting that in their reply brief, the page one of the reply brief, the very first heading is the issue of arbitrability and the construction of this release are inextricably intertwined. That's their own heading. And maybe it is. But the real point is that deciding that defense of release goes to the merits, the underlying merits of the arbitration. It's an affirmative defense. And just like this court held in the St. Paul case that we cited in the briefs, when a defense goes to the merits, it's appropriate for the arbitrator to decide it. I want to, I don't think that the court needs to get into construing this release because that responds to the notion that there's two releases here, an argument that the appellants never made to the district court, their argument that he erred by not making that ruling, but they never raised it. And it is unsupportable. And I just would direct the court to the joint appendix at page 167 that contains the release. It's in four paragraphs. The first one is these various parties, the EX2 parties and the West parties, none of whom are part of the purchase agreement, agree, or I guess some of the individuals are, but there's 16 of them, say that they will release essentially ADESTA and other parties related to ADESTA who are defined as the G4S parties from any claims arising out of or in connection with any of the claims in the, of the claims or the subject matter of the lawsuits. In other words, it's limited to the subject matter of the lawsuit. The second paragraph is the G4S parties providing that exact parallel release back. So that is the mutual release, those two paragraphs. There are then two following paragraphs, both of which begin this mutual release using the singular pronoun, this, this mutual release. The first one of those paragraphs is the one referred to by my colleague. And it says this mutual release covers, just covers and discharges without limitation of the foregoing general terms. In other words, it is narrowing and defining the foregoing general terms. It's not expanding it. It's not a second independent release. And then the next paragraph, Judge Cobus here. I think I heard you say that we don't have to interpret the settlement agreement. Is that correct? That's right. I I'm only addressing his argument. I don't think. So, so let me ask you this. Is it fair to say the district court did interpret the settlement agreement, at least to a certain degree? Your Honor, I think there's some dicta in his decision because really what he has is a three or four page discussion. And then at the last two pages, he said, turning now to the motion to compel, here's my ruling. So, so was that, was that error? I don't think so because they spent most of their briefing to him asking that he do that, just as they did, frankly, to this court. And so what he was doing is he was responding to their argument, but at most it's dicta and it's not going to be binding on the arbitrator. So it to the extent there's a release defense here, it's for the arbitrator to decide. It would have been an error if he had purported to say the arbitrator can't decide this because it's such a specious argument, but that's not what he said. They're free to make that argument to the arbitrator and I'm sure they will. Okay. Thank you. In any event, with regard to the release, I think his reading of it was right. We'll obviously argue that to the arbitrator, but they'll argue the other side of it. You know, there were two transactions here. There was a very large $66 million purchase and sale of an agreement among one set of parties. And then years later, there was a resolution of a restrictive covenant trade secret litigation among a different set of only somewhat overlapping parties. Parties have multiple agreements all the unless they explicitly say so. In every case that they've cited with regard to the potential settlement agreement voiding a prior agreement, it was explicit, just as Judge Erickson pointed out in his questioning, that the prior agreements were superseded. I see my time has expired. I thank the court for its consideration and I ask you to affirm the decision of the district court. Thank you, Mr. Andelman. Counsel, you have two minutes. Yes. I mean, the whole premise of their argument is that the settlement agreement doesn't apply and that our position, Your Honor, is by the settlement agreement, the arbitration provision in the purchase agreement is no longer valid. In this court, the Eighth Circuit held in the arbitration provision that incorporated the AAA rules was a clear and unmistakable expression of the party's intent to reserve the question of arbitrability for the arbitrator, not the court. However, Fallow did not address the threshold question we confront now, whether the arbitration agreement itself is valid. Also, it is without question that an arbitrator derives his or her powers from the party's agreement to forego the legal process and submit their disputes to private resolution. It follows that where a party initially consents to arbitrate certain types of claims but later enters into a settlement agreement that releases claims that had been subject to the initial consent to arbitrate, the claims that have been released by such settlement are no longer subject to arbitration. That is the question we are asking you to decide. Now, when we are talking about how to interpret the settlement agreement and what that can mean, what we were arguing in our briefs, what we argue now is that when you look at that in a favorable light, it means that there are questions of interpretation and fact that need to be decided by the fact finder. What is the scope of that settlement agreement? Okay, it goes to the arbitrability question. We were presenting to the court that there were questions to consider, that you cannot presume that the settlement agreement did not release those NISTA obligations as counsel is arguing. He just says it doesn't apply, go to under the arbitration agreement, under the purchase agreement. That's not how it works. The settlement agreement is a standalone agreement. The court has an obligation to look at that standalone agreement, the settlement agreement, and see, is there agreement to arbitrate? No, there isn't. They had every opportunity to put an arbitration provision in a settlement agreement. I see them all the time. They didn't do it. If they want to fight about the scope of the settlement agreement like we do, then it has to be at the district court because there's no agreement to arbitrate the scope of the settlement agreement. I see my time is run, but what we would ask is that the court vacate the district court's order and remand the case for further proceedings to determine what was the party's intent under the settlement agreement. All right, thank you, counsel. Thank you. Okay, the case is submitted and the court will issue a decision in due course. Thank you. Thank you. You may stand aside. Does that conclude our